UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PHILLIP R. KOGAN,  )  | | |
| Plaintiff,  ) | | |
|   ) | | |
| vs.   ) | 1:09-cv-0943-RLY-MJD | |
|   ) | | |
| WASTE MANAGEMENT OF  ) | | |
| INDIANAPOLIS; WASTE  ) | | |
| MANAGEMENT OF INDIANA, INC. d/b/a ) | | |
| Waste Management of Indianapolis;  ) | | |
| ENVIRONMENTAL TEST SYSTEM,  ) | | |
| INC., d/b/a Waste Management of  ) | | |
| Indianapolis; and CHAUFFEURS,  ) | | |
| TEAMSTERS, WAREHOUSEMEN, AND ) | | |
| HELPERS LOCAL UNION NO. 135,  ) | | |
| Defendants.  ) | | |

**ENTRY GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTIONS**

Pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), Phillip Kogan is suing his former employer and his union because he believes his employer breached its obligations to him under the applicable collective bargaining agreement ("CBA") and his union breached its duty to fairly represent him. Because Kogan's claim is against both his employer and his union it is a so-called "hybrid 301," and he is required to prove his claim against both Defendants in order to prevail. *Nemesky v. ConocoPhillips Co.*, 574 F.3d 859, 864 (7th Cir. 2009). Kogan's former

employer, Waste Management of Indiana L.L.C. ("WMI")[1] and his union, Chauffeurs, Teamsters, Warehousemen, and Helpers Local Union No. 135 ("Teamsters Local 135") have both filed motions seeking an entry of summary judgment in their favor. This entry addresses those motions.

**Factual Background**

Kogan went to work for WMI as a roll-off truck driver in October 1999. The terms "roll-off" and "front-load" refer to two different types of trucks driven and utilized in WMI's waste management business, the importance of which will become apparent in the discussion of this lawsuit. Kogan joined Teamsters Local 135 shortly after starting with WMI and remained a member of that union and an employee of WMI until July 7, 2007, when he began employment with an affiliated company, Waste Management of Washington ("WMW"), located in the state of Washington. Kogan voluntarily sought the position with WMW and, upon receiving the job, he resigned from Teamsters Local 135

---

[1]Plaintiff's complaint does not name Waste Management of Indiana L.L.C. as a Defendant; rather it has named Waste Management of Indianapolis and other "Waste Management" entities, apparently unsure of the exact name of the entity which employed him. However, in connection with its motion, Defendant asserts that Waste Management of Indiana L.L.C. was the properly named employer of Mr. Kogan and has provided an explanation of why that is the case, by tracing corporate name changes over time. Kogan did not challenge that factual assertion. Accordingly, pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1 that fact is assumed true and Waste Management of Indiana L.L.C. will be substituted for the other "Waste Management" entities as the proper defendant employer.

and transferred his local union membership[2] to Teamsters Local 174, which had its own CBA with WMW, negotiated completely separate from the CBA between Teamsters Local 135 and WMI. Kogan was a probationary employee with WMW for the first ninety days, after which he was paid at full scale pursuant to the CBA between WMW and Teamsters Local 174.

While with WMW, Kogan drove a front-load truck on recycling routes for a few months before taking a position loading and transferring trailers at the WMW transfer station, operating an excavator and driving a roll-off truck on non-route assignments. In December 2007, Kogan requested an opportunity to transfer back to Indianapolis for family reasons. He contacted WMI's Route Manager, Bob Curtis ("Curtis"), who after a couple of weeks was able to find a position as a roll-off driver for Kogan within WMI. Curtis informed Kogan that when and if he transferred back to Indianapolis, he would return with no accumulated seniority from his earlier tenure with the company and would start at the bottom of the seniority list. Kogan claims that this is the first time he learned that by transferring to WMW he had lost his seniority with WMI; regardless, he accepted the job in Indianapolis, rejoined Teamsters Local 135 and returned to work for WMI effective February 3, 2008.

On January 3, 2009, Curtis provided Kogan with a letter stating that, as a result of

---

[2] Mr. Kogan remained a member of the International Teamsters Union at all times, transferring only his local union affiliation.

the downturn in the economy WMI was implementing an employee lay-off pursuant to the procedures outlined in the CBA. Kogan had heard rumors of an impending lay-off, but had been told by other employees that the lay-off would have to be pursuant to the seniority list posted in a locked glass case at WMI, which list still had his seniority date from his original tenure with WMI. The CBA contained a provision requiring WMI to post an accurate seniority list every three months, but that provision had not been followed, and a list with accurate seniority dates for all employees was only posted after the lay-off.

After being laid off, Kogan filed a grievance claiming that he had a right to avoid lay-off by "bumping" into one of two front-load truck driving positions based on his seniority and qualifications or into a shop maintenance position at the transfer station. Sydria Wilkerson ("Wilkerson") and Brian Daniels ("Daniels") were the employees then occupying those two front-load truck driving positions and Mark Wells ("Wells") was the individual who occupied the shop maintenance position, which was a non-union position not covered by a CBA. Wilkerson's seniority date was January 6, 2008, and Daniels' was May 12, 2008.

Teamsters Local 135 presented Kogan's grievance to WMI. After meeting with the union officials, WMI denied the grievance for more than a single reason. First, in order to "bump" a junior employee from a particular job classification, in this case "front-load driver," the CBA requires that the person who is seeking to bump must have prior

4

experience in that job while working for WMI. Kogan had never driven a front-load truck while with WMI, he had only driven one while working for WMW, which WMI claimed did not provide him with "qualified" status under the CBA. Also, based on Kogan's new seniority date upon return to WMI, he was less senior than Wilkerson and therefore could not bump into her position. Finally, the non-union maintenance position was not subject to the CBA and WMI asserted that Kogan had no right to claim it. Teamsters Local 135 withdrew Kogan's grievance at the third step in the process on March 10, 2009, and did not proceed to arbitration.

Following the lay-off, Kogan began working for another waste removal company, Ray's, as a front-load driver in February 2009. In May of that year, he learned from a union steward, Rick Baker ("Baker"), that there was a vacant front-load driving position at WMI. Kogan told the union steward, the Teamsters Local 135 business agent and Curtis that he wanted that job. The job was posted for bid on April 29, 2009. Pursuant to the CBA, the job was posted for three days, but no active or laid-off WMI union employee left his name on the posting. WMI chose to place Wells into the position. Wells had previously driven a front-load truck for WMI before quitting and later returning to WMI to fill the non-union shop maintenance position, and the company considered him to be the most qualified for the position because he would require no training.

Baker filed a grievance with WMI on behalf of all laid-off union employees

(hereinafter "class grievance") who were not given the vacant front-load position that Wells received. Kogan was not specifically named in the grievance and he did not file a grievance on his own behalf. WMI denied the class grievance after meeting with local union officials. The company maintained that none of the laid-off union employees had prior experience with WMI driving a front-load truck, which allowed the company to reach its own judgment with respect to the most qualified applicant. Teamsters Local 135 withdrew the class grievance at the third stage, electing not to proceed to arbitration and Kogan has remained a front-load driver for Ray's.

**Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather "must set forth specific facts showing that there is a genuine issue for trial ." Fed. R. Civ. P. 56(e).

A genuine issue of material fact exists if "there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Factual disputes that are irrelevant or unnecessary to the claims before the court will not alone defeat a summary judgment motion. *Id*. at 247-48. When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

Summary judgment is also proper, indeed it is mandated, when it is clear that the plaintiff will be unable to satisfy the legal requirements necessary to establish his case. *See Celotex*, 477 U.S. at 322. Under this scenario, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. The moving party is, therefore, entitled to judgment as a matter of law due to the nonmoving party's failure to make a sufficient showing on an essential element of which he carried the burden of proof. *Id*.

**Discussion**

Section 301 of the LMRA gives the federal courts jurisdiction over lawsuits brought to enforce the terms of a CBA. 28 U.S.C. § 185. As indicated at the start of this entry, Plaintiff's case is a so-called "hybrid 301" case because he is suing his former employer for breach of the CBA and his union for failing to provide him fair

representation. A union breaches its duty to fairly represent a member if it acts in a manner which is arbitrary, discriminatory or in bad faith. *Nemesky v. ConocoPhillips Co.*, 574 F.3d at 865. To prevail, Kogan must make his case against both defendants because "neither claim is viable if the other fails." *Crider v. Spectrulite Consortium*, 130 F.3d 1238, 1241 (7th Cir. 1997). Unfortunately for Kogan, his lawsuit does not get very far regardless of whether the court analyzes his assertion of a CBA breach or his claim that the union failed to represent him in good faith.

Chronologically, Kogan's first complaint is that when he returned to Indianapolis from the state of Washington, he did not retain the same seniority date that he had when he left Indianapolis. He claims that he should have kept that seniority date because WMW was just another affiliate of the worldwide Waste Management organization. However, the CBA which granted him seniority rights - the one between WMI and Teamsters Local 135 - clearly defines seniority as "an employee's length of continuous service with the Company" and unequivocally states in the very first sentence that WMI will be referred to as the "Company" throughout the agreement. WMW was a different employer, with a different CBA between it and a different local union. There is no reasonable support within the CBA for Kogan's argument that he retained his seniority.

Kogan's second complaint is that he was laid off despite the fact that the seniority list posted at the WMI facility at the time the lay-off was announced still had him listed with his October 1999 seniority date, which date would have kept his seniority sufficient

to survive the lay-off.  However, just because the CBA required that a seniority list be posted at the WMI facility does not mean that the list must be followed by the parties in the execution of a lay-off, even if the list contains mistakes.  There is simply no such requirement in the CBA, and it would be nonsensical to imply one.

Nevertheless, Kogan also claims that even with his February 3, 2008, seniority date, he should have been able to bump two other employees with less seniority instead of being laid-off in January 2009.  "Bumping" refers to the right held by a more senior employee to avoid lay-off by taking the job of a less senior employee who holds a job within the same classification or who holds a job in another job classification for which the more senior employee is qualified to perform the work.  The CBA provides that where bumping to a job in a different classification, "qualified to perform the available work shall be defined as having worked and qualified in this classification while an employee of the Company."

Kogan claims that he should have been allowed to bump into the front-load driver position held by Daniels, who had a seniority date of May 12, 2008.  However, Kogan had never driven a front-load truck while working for WMI, which is the only way he could claim that he was qualified pursuant to the CBA.  His short experience in Washington state did not qualify him for the position because, as noted previously, WMW is not the "Company" as that term is defined in the contract.  The second job which Kogan claims he should have been allowed to bump to is a maintenance position,

9

but the maintenance job is not a bargaining unit position and is not covered by the CBA. Because Kogan's right to bump was a right which was provided by the CBA, and the CBA covered only bargaining unit jobs, he had no right to bump a junior employee in a non-bargaining unit position. Accordingly, there was no breach of the CBA and Teamsters Local 135 did not unfairly drop the pursuit of the grievance filed by Kogan on the issue of his right to bump.

That leaves Kogan's final complaint, that he should have been called back from lay-off and given the front-load driver position which was given to Wells in May of 2009. Wells was in a non-union maintenance position when he accepted the job, but had previously held a front-load driver position with WMI. No laid-off employee was qualified for a front-load driver position under the terms of the CBA. When there are no qualified WMI union employees who seek a job, the CBA gives the company the right to fill the position with the person it determines to be the most qualified for the job. Though not a union employee at that time, Wells had held the front-load driver position in the past and WMI's determination that he was the most qualified applicant is well within reason. Accordingly, there was no contractual breach, and the union's decision to drop its class-wide grievance was not arbitrary or a failure to represent Kogan in good faith.

**Conclusion**

In the end, though his hybrid section 301 claim requires that he prove his case

against both his former employer and his union, Kogan has failed on both fronts. There was no CBA breach and Teamsters Local 135 acted reasonably and in good faith in representing him. Accordingly, the summary judgment motions of WMI (Docket # 43) and Teamsters Local 135 (Docket # 46) are **GRANTED**. A separate judgment shall enter in favor of both Defendants.

**SO ORDERED** this   11th    day of January 2011.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Michael C. Kendall
KENDALL LAW OFFICE
mckatlaw@aol.com

Brian Lee Mosby
LITTLER MENDELSON, P.C.
bmosby@littler.com

Todd M. Nierman
LITTLER MENDELSON PC
tnierman@littler.com

Fred O. Towe
FILLENWARTH DENNERLINE
GROTH & TOWE LLP
ftowe@fdgtlaborlaw.com